UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SANTOS ANDRE GONZALES, on behalf of
himself and all those similarly situated,

                Plaintiff,

      -against-

LOVIN OVEN CATERING OF SUFFOLK, INC. and
LOVIN OVEN CATERING OF SUFFOLK, LLC and
LOVIN' OVEN CATERING OF SUFFOLK, LLC and
LOVIN' OVEN/LANDS END CORP. and LOVIN'
OVEN MOTEL ASSOCIATES, LLC and LOVIN'
OVEN/FELICE'S CORP. and GERARD SCOLLAN,
in his individual and professional capacities,

                Defendants.
-------------------------------------------------------------------X

**Docket No.:**
**14-CV-2824(DHR)(SIL)**

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE OF CLAIMS**

Plaintiff Santos Andre Gonzales ("Gonzales" or "Plaintiff"), and Defendants Lovin Oven Catering of Suffolk, Inc., Lovin Oven Catering of Suffolk, LLC, Lovin' Oven Catering of Suffolk, LLC, Lovin' Oven/Lands End Corp., Lovin' Oven Motel Associates, LLC, Lovin' Oven/Felice's Corp., and Gerard Scollan, in his individual and professional capacities ("Defendants"), (collectively as the "Parties"), through their respective counsel of record, file this Joint Motion for Approval of Settlement and Dismissal with Prejudice of Claims.

## SETTLEMENT AND DISMISSAL OF CLAIMS

1.    In this action, entitled *Santos Andre Gonzales v. Defendants Lovin Oven Catering of Suffolk, Inc. and Lovin Oven Catering of Suffolk, LLC and Lovin' Oven Catering of Suffolk, LLC and Lovin' Oven/Lands End Corp. and Lovin' Oven Motel Associates, LLC and Lovin' Oven/Felice's Corp. and Gerard Scollan, in his individual and professional capacities*, Plaintiff alleged, *inter alia*, that Defendants: (1) failed to pay Plaintiff overtime in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); (2) failed to pay

Plaintiff the minimum wage rate for all hours worked in violation of the FLSA and the NYLL; and (3) failed to provide Plaintiff with accurate wage statements in violation of the NYLL.

2. Plaintiff brought this lawsuit against Defendants pursuant to the collective action provisions of 29 U.S.C. § 216(b), on behalf of himself and all other persons similarly situated during the applicable FLSA limitations period, and one additional person, Lelis Turcios ("Turcios"), opted-in to this matter on June 2, 2014. On August 14, 2015, the Parties filed a stipulation of voluntary dismissal as to Turcios as he previously settled his claims with Defendants under the supervision of the Department of Labor. Gonzales is the only Plaintiff remaining in this action.

3. The Parties continue to dispute the amount of overtime wages owed, if any, and Defendants continue to deny each and every claim that Plaintiff made in the action. However, as a result of the August 5, 2015 Settlement Conference with Magistrate Judge Steven I. Locke, the Parties reached an agreement to fully, finally, and amicably resolve all of Plaintiff's claims in the action without the expense of further litigation. The agreed upon amount was $70,000, inclusive of attorney's fees and expenses. Of this amount, $41,022.85 will be paid to Plaintiff and $28,977.15 will be paid to Plaintiff's attorneys. Of Plaintiff's portion, for purposes of settlement and without any admission of liability, one-third will be considered wages from which there will be withholding and will be reported on a W-2, and two-thirds will be considered liquidated damages or interest and be reported on a 1099 form without deductions.

4. In furtherance of the Parties' mutual desire to resolve their dispute without further litigation between them, they have entered into a Settlement Agreement (the "Agreement")[1]. The Parties have agreed to these settlement terms in order to avoid the cost of litigating the action. By agreeing to these terms, Defendants do not admit that they violated any federal, state, or local law, rule, regulation, or ordinance; that any action taken with respect to Plaintiff was

---

[1] Attached hereto as Exhibit A.

wrongful or unlawful; or that Defendants breached any of their policies or procedures. The primary purpose of this Motion is to request the Court's approval of the Agreement in accordance with the requirements of the FLSA and the Second Circuit's recent decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 2015 WL 466428 (2d. Cir. Aug. 7, 2015). In *Cheeks*, the Second Circuit ruled that: "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Id.* at *6.

5. The Parties represent to the Court that the Agreement: (a) is fair to all Parties; (b) reasonably resolves bona fide disagreements between the Parties with regard to the merits of the Plaintiff's claims; and (c) demonstrates the good faith intention by the Parties that the Plaintiff's claims for liability and damages be fully and finally resolved, and not re-litigated in whole or in part at any point in the future.

6. In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See id.* at *7, fn 3. Here, the parties believe that their settlement is fair and reasonable because: (1) the parties reached an agreement with respect to the monetary terms of the settlement during a judicially supervised settlement conference held before Magistrate Judge Steven I. Locke on August 5, 2015; and (2) the Agreement satisfies all the factors set forth in *Wolinsky v. Scholastic, Inc.*, 2012 WL 2700381, at *2 (S.D.N.Y. 2012).

7. The first *Wolinsky* factor examines "the Plaintiff's range of possible recovery." In this case, Plaintiff was employed by Defendants from in or about the summer of 2002 until in or about November 2013. From the beginning of 2002 until 2006, Plaintiff was employed by Defendants to provide laundry services for their various catering operations. During this period of time, Plaintiff was paid on an hourly basis at a rate ranging from an initial $7.00 per hour to an eventual $11.30 per hour. In 2007, Plaintiff transitioned to working to set up and break down Defendants' catering events. Plaintiff worked for Defendants in this capacity until his

termination in or about November 2013. On or about April 21, 2008, Defendants began paying Plaintiff a salary of $700 per week, each week, regardless of how many hours he worked each week. Defendants continued to pay Plaintiff at this rate until his termination in or about November 2013. For most of the time between May 8, 2008, which is six years preceding the filing of this action, and Plaintiff's termination in or about November 2013, Plaintiff alleges that he worked between fifty and sixty hours each week during Defendants' busy season in the summer, and very minimal, if any, overtime throughout the rest of the year.

8. Although conflicting with the Complaint and disputed by Defendants, Plaintiff's deposition testimony confirms that during the FLSA statutory period, beginning May 5, 2011 and continuing until Plaintiff's termination in November 2013, Plaintiff: (1) worked an average of fifty-five hours per week during Defendants' three month busy season; and (2) worked an average of 42.5 hours per week throughout the rest of the year. Based on his $700 per week salary and a forty-hour work week, Plaintiff's hourly rate was calculated to be $17.50 per hour. His overtime rate, calculated at one and one-half his hourly rate, is therefore $26.25. Using this overtime rate, as calculated by Plaintiff, and the average overtime worked per week, as testified to by Plainitff, as applied to the different time periods of each year, Plaintiff's actual unpaid wages during the FLSA statutory period, if a factfinder credited his hours and accepted his method of calculation, would add up to $17,184.31, not inclusive of liquidated damages. Doubling that to factor in liquidated damages equals $34,368.62. As such, this settlement exceeds the amount of damages that Plaintiff could possibly recover in this litigation under the FLSA.

9. Defendants assert they have at all times acted in good faith and as such argue that Plaintiff is not entitled to any measure of liquidated damages.

10. The additional amount Plaintiff is receiving in this settlement is compensation for his unpaid wages claims under the NYLL and the parties believe that it fairly and adequately compensates him for such claims.[2] As such, the total agreed upon settlement amount is a fair and reasonable resolution of disputed claims.

11. The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." Settling Plaintiff's claim at this point will avoid continuing litigation costs for all Parties. Had this action not settled, additional depositions may have taken place, including the depositions of possible non-party witnesses. Moreover, Plaintiff and Defendants would likely have sought the Court's permission to file a Motion for Partial Summary Judgment. Both parties would have opposed the respective motions for Summary Judgment, and, after lengthy motion practice, a severely delayed trial would have ultimately taken place anyway. Settlement at this point will obviate such time-consuming and expensive litigation.

12. The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." All parties face the risk of losing. Plaintiff, an hourly employee at his current job, makes only $11.75 per hour and was making only $700 per week, at most, while working for Defendants. He could lose a settlement that compensates him fairly for heavily disputed claims, in an amount that is significant to him. At the same time, Defendants faced the inherent risks and expenses imposed by any dispositive motion practice and proceeding to a potential trial, after which their liability could have exceeded what they have agreed to pay as part of this settlement.

13. The fourth *Wolinsky* factor examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel." The settlement negotiations

---

[2] The Parties note that the settlement with respect to Plaintiff's NYLL claims do not require judicial approval.

took place over several months and concluded after significant discovery had been exchanged and Plaintiff, the named Defendant, and a 30(b)(6) witness had all been deposed. Prior to reaching an agreement, the parties engaged in telephonic and email exchanges to discuss potential settlement and then requested and attended a judicially supervised settlement conference before Magistrate Judge Locke on August 5, 2015. With the Court's assistance, the Parties were able to reach a settlement in principal. (*See* ECF Docket No. 29).

14. Plaintiff's counsel's practice focuses on plaintiff-side employment law with an emphasis on wage and hour individual and class actions, and they have had much success litigating numerous wage and hour class actions. *See, e.g., Rosario v. Valentine Avenue Discount Store, Inc.*, 10-CV-5255 (ERK)(LB) at Docket No. 252-1, a wage and hour class action settled for four million dollars ($4,000,000.00); *see also* www.employmentlawyernewyork.com. Likewise, defense counsel in this case, Campolo, Middleton & McCormick, LLP, is a leading defense firm and is very experienced in wage and hour matters as well. *See* www.cmmllp.com.

15. The fifth *Wolinsky* factor examines the "possibility of fraud or collusion." There is no evidence of any fraud or collusion in this case. The settlement was only finally achieved after more than a year of litigation, during which significant discovery was exchanged, all party depositions were completed, and the parties attended a judicially supervised settlement conference.

16. Lastly, there is no evidence of any factors weighing against approval of this settlement that proceeding with the case is the better alternative. Plaintiff's release in Paragraph 5 of the Settlement Agreement applies only to pre-existing FLSA and NYLL wage claims and therefore does not fall into the category of releases that are so broad and all encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Lopez v.*

*Nights of Cabiria, LLC*, 2015 WL 1455689 at *6-7 (S.D.N.Y. March 30, 2015); *see also Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010). On the contrary, this release is narrowly tailored to only release claims that are the subject of the instant action. Further, the Parties are aware that confidentiality provisions are highly suspect in FLSA settlement agreements as a matter of "well-established public policy" that seeks to "ensure that all workers are aware of their rights." *Guareno v. Vincent Perito, Inc.*, 2014 WL 4953746 at *1 (S.D.N.Y. Sept. 26, 2014). The Parties recognize that in connection with this Motion, the Settlement Agreement will become a part of the public record. However, as explained in Section 9 of the Settlement Agreement, the confidentiality/non-disclosure provision was specifically bargained-for consideration in exchange for Defendants providing Plaintiff with a neutral employment reference going forward, something of significant value to Plaintiff. As the Court is surely aware, a bargained for agreement is the essence of a contract and "the right to make contracts is embraced in the conception of liberty as guaranteed by the Constitution." *Chicago B. & Q.R. Co. v. McGuire*, 219 U.S. 549, 667 (collecting cases).

17. With respect to the portion of the settlement amount to Plaintiff's counsel, $28,977.15 - - which consists of $28,000 in attorney's fees and the remainder for costs - - that amount reflects a significant reduction of Plaintiff's attorneys' fees expended in this matter. In fact, the portion of the settlement amount that Plaintiff's counsel will receive is less than two thirds of the actual amount that counsel expended thus far, as explained below.

18. With regard to costs, Plaintiff's counsel has incurred $977.15 in out of pocket expenses prosecuting this case. All available receipts for these expenses are attached hereto as Exhibit B. The $28,977.15 figure above includes full compensation of these expenses.

19. With regard to attorneys' fees, as explained in the paragraphs below, Plaintiff's attorneys' fees in this matter, calculated pursuant to the lodestar, are $45,267.50. Rather than continuing to litigate this matter, Plaintiff's counsel believes that $28,000 in attorneys' fees is a reasonable compromise to settle this matter.

20. With regard to how Plaintiff's counsel calculated its total attorney's fees, Plaintiff's billing records, broken down by timekeeper and task, are attached hereto as Exhibit C. The hourly rates used for attorneys and paralegals who worked on the case - - $350 per hour for Partner Michael J. Borrelli, $300 per hour for Senior Counsel Alexander T. Coleman, $250 per hour for all other attorneys, and $75 per hour for all non-attorney staff/paralegals - - are either the same rates or minimally higher rates than those approved for Plaintiff's counsel by Judges Tomlinson and Bianco in the case of *Castellanos v. Deli Cassagrande Corp., et al.*, E.D.N.Y. Docket No. 11-CV-00245 (JFB)(AKT) (for Michael J. Borrelli, associate attorneys and non-attorney staff), and by Judges Pollak and Mauskopf in the case of *Dominguez v. B S Supermarket, Inc.*, E.D.N.Y. Docket No. 13-CV-7247 (RRM)(CLP) (for Michael Borrelli, Alexander T. Coleman and non-attorney staff). Moreover, both *Castellanos* and *Dominguez* are default cases. In non-default cases, Plaintiff's counsel's approved rates are higher. For example, in *Patino v. Brady Parking, et al.*, S.D.N.Y. Docket No. 11-CV-3080 (AT)(DCF), Michael J. Borrelli and Alexander T. Coleman's hourly rates were approved at $400 and $325 respectively.

21. The parties respectfully request that the Court approve this settlement as fair and reasonable and enter the proposed Order attached hereto as Exhibit D.[3]

## CONCLUSION

WHEREFORE, the Parties to this action respectfully request an Order:

---

[3] The Parties agree that the settlement amount more than compensates Plaintiff for his alleged unpaid wages under the FLSA. Moreover, as set forth above, the parties note that Plaintiff's NYLL claims do not require judicial approval; however, the settlement amount adequately covers Plaintiff's NYLL claims.

1. Approving the Agreement between Plaintiff and Defendants; and

2. Dismissing with prejudice the claims of Plaintiff against Defendants.

| | |
|---|---|
| BORRELLI & ASSOCIATES, P.L.L.C. | CAMPOLO, MIDDLETON & MCCORMICK, LLP |
| By: _____ | By: _____ |
| Alexander T. Coleman, Esq. | Jeffrey N. Basso, Esq. |
| 1010 Northern Boulevard, Suite 328 | 4175 Veterans Memorial Highway, Suite 400 |
| Great Neck, New York 11021 | Ronkonkoma, New York 11779 |
| P: 516.248.5550 | P: 631.738.9100 |
| F: 516.248.6027 | F. 631.738.0659 |
| ATC@employmentlawyernewyork.com | JBasso@cmmllp.com |
| Attorneys for Plaintiff | Attorneys for Defendants |