UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SANTOS ANDRE GONZALES, on behalf of
himself and all those similarly situated,

                      Plaintiff,

   -against-

LOVIN OVEN CATERING OF SUFFOLK, INC.,
LOVIN OVEN CATERING OF SUFFOLK, LLC,
LOVIN' OVEN CATERING OF SUFFOLK, LLC,
LOVIN' OVEN/LANDS END CORP., LOVIN'
OVEN MOTEL ASSOCIATES, LLC, LOVIN'
OVEN/FELICE'S CORP., and GERARD
SCOLLAN, in his individual and professional
capacities,

                   Defendants.
----------------------------------------------------------------X

**DECISION AND ORDER**

14-CV-2824 (SIL)

**LOCKE, United States Magistrate Judge,**

Presently before the Court in this wage and hour action, brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and New York Labor Law ("NYLL") §§ 160, 195, 652 and related regulations, alleging claims for Defendants' failure to pay the statutorily required minimum and overtime wages, is the parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice of Claims. *See* Docket Entry ("DE") [33].[1]  A hearing on the motion was held in Court on October 26, 2015.  This Decision and Order confirms the Court's decision as set forth on the record denying the motion without prejudice.

---

[1] This matter has been assigned to this Court for all purposes.  DE [30], [32].  Further, although the Complaint was drafted as both a collective action pursuant to the FLSA, 29 U.S.C. § 216, and a class action pursuant to Fed. R. Civ. P. 23, *see* Compl. ¶¶ 19-33, the issue of certification was never litigated or decided.  *See* DE [19] (letter withdrawing request to make motion for conditional certification); DE [36] (stipulation and order concerning settlement of claims of Lelis S. Turcios with approval of United States Department of Labor).  Accordingly, this matter was tentatively settled as single plaintiff case.

The terms of the proposed settlement agreement, which was filed with the Court, *see* DE [33-1], that are relevant to the approval analysis are: (1) the amount of the settlement; (2) the confidentiality provision; and (3) the release language. The amount of the settlement represents full compensation for all wages allegedly owed, liquidated damages and attorneys' fees.

The confidentiality provision provides:

> Plaintiff agrees that neither he nor any person acting by, through, under or in concert with him, including but not limited to Plaintiff's Attorneys, may at any time communicate and/or publicize, either in writing or orally, the terms, conditions or existence of this Agreement, or any fact concerning its negotiation, execution, or implementation, to any person, agency, or entity, including any current or former employees of Defendants, except that in the event of an inquiry from a third party, Plaintiff and any person acting by, through, under or in concert with him, including but not limited to his attorneys, may state only that his claim has been resolved and that he is not at liberty to discuss it further.
>
> Notwithstanding the foregoing restrictions, it is understood that as the sole exceptions to this confidentiality/non-disclosure provision, Plaintiff may discuss this Agreement: (a) if required to do so by a court of law; (b) if necessary to implement this Agreement or to enforce this Agreement or any of its terms; (c) with his attorneys, accountants, and/or tax advisors in order to obtain professional advice within the scope of their representation; (d) and with his spouse or immediate relatives.

*See* Settlement Agreement, DE [33-1], § 9.

The release language provides that Plaintiff discharges Defendants:

> . . . from all actions and/or claims for unpaid overtime or wages brought under the New York Labor Law and the Fair Labor Standards Act and any other actions and/or claims against the Defendants, known or unknown, which he may have as of the date of this Agreement, including but not limited to any alleged violation of federal, state or local law, regulation, rule or ordinance which relates in any way to Defendants' payment of wages to Plaintiff during Plaintiff's employment with Defendants . . . .

*Id.* at § 5.

The Court's analysis as to whether to approve the parties' settlement agreement is two-fold. Initially, the Court considers whether the agreement satisfies the standards summarized in

2

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012). Then, if those standards are met, the Court considers whether the agreement complies with the Second Circuit's admonitions recently articulated in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

### A. The *Wolinsky* Factors

The first step in the analysis is considering the parties' agreement with respect to the various factors set forth in *Wolinsky*, including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335 (internal quotations omitted) (citing *Medley v. Am. Cancer Soc'y*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 54 (E.D.N.Y. 2010)). These factors should be considered in light of the totality of the circumstances. *Id*. Other considerations that might militate against approval include: (1) the presence of other employees similarly situated to the claimant; (2) a likelihood that the circumstances will recur; (3) a history of non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue in dispute. *See id*. (citing *Dees*, 706 F. Supp. 2d at 1244). Other courts in this circuit have stated the factors somewhat differently. *See, e.g.*, *Najera v. Royal Bedding Co., LLC*, No. 13-cv-1767 (NGG), 2015 WL 3540719, at *2 (E.D.N.Y. June 3, 2015). In *Najera*, Judge Garaufis articulated the relevant considerations as: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the risk of

establishing liability; (4) the risk of establishing damages; (5) the ability of defendants to withstand a judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation. *Id.* (collecting cases and approving the settlement agreement).

However stated, the parties' proposed settlement agreement satisfies these standards. In sum, the settlement amount reflects more than 100 cents on the dollar both for liability and liquidated damages assuming that the finder of fact accepted Plaintiff's version of events in total. *See* DE [33] ¶ 3. The amount further provides for reasonable attorneys' fees. *Id.* at ¶¶ 17-20. Accordingly, it accounts for the full range of potential recovery, it avoids further burdens and expenses for both sides and it acknowledges the risks of continued litigation. Additionally, having personally supervised the settlement negations, *see* DE [29] (in-court settlement conference conducted), there was clearly arm's length bargaining between experienced counsel and no possibility of fraud or collusion. With respect to the remaining factors, none of them militate against approval of the settlement. Accordingly, the remaining issue is whether the parties' agreement complies with the Second Circuit's admonitions set forth in *Cheeks*.

**B. Cheeks Admonitions**

In *Cheeks*, the Second Circuit held that under the FLSA, parties cannot enter into a private settlement agreement and stipulate to dismissal of their case pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) without approval of the Court or the United States Department of Labor. *Cheeks*, 796 F.3d at 200. In reaching its conclusion, the Second Circuit recognized certain guideposts for the district courts to consider with respect to private settlements of FLSA claims that demonstrated a "potential for abuse" under the statute. Particularly relevant here, the Court in *Cheeks* stated:

> Examining the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and

> underscores why judicial approval in the FLSA setting is necessary. In *Nights of Cabiria*, the proposed settlement agreement included (1) "a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA;" (2) an overbroad release that would "waive practically any possible claim against the defendants, including unknown claim and claims that have no relationship whatsoever to wage-and-hour issues;" and (3) a provision that would set the fee for plaintiff's attorney . . . without adequate documentation.

*Id.* at 206 (quoting *Lopez v. Nights of Cabiria, LLC*, --- F. Supp. 3d ---, 2015 WL 1455689, at *3 (S.D.N.Y. Mar. 30, 2015)).

Applying the Second Circuit's language above, the parties' joint motion for approval of the settlement agreement must be denied for two reasons. First, the confidentiality provisions are similar to those rejected by Judge Kaplan in *Nights of Cabiria*, which was cited with approval by *Cheeks*. *Id.*; *see also Nights of Cabiria*, 2015 WL 1455689, at *2, *5 (rejecting confidentiality provisions that precluded plaintiff from speaking with anyone about the settlement other than his immediate family, financial advisors and attorneys or in response to compulsory legal process). Simply stated, these types of provisions that "bar plaintiffs from openly discussing their experiences litigating . . . wage and hour case[s] . . . run afoul of the purposes of the FLSA and the 'public's independent interest in assuring that employees' wages are fair.'" *Nights of Cabiria*, 2015 WL 1455689, at *5 (quoting *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003)); *see also Mahalick v. PQ New York, Inc.*, No. 14 Civ. 899 (WHP), 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015) (rejecting settlement agreement with similar terms); *Coffin v. MRI Enters.*, No. 11-CV-2453 (DRH), 2015 WL 3930272, at *1 (E.D.N.Y. Mar. 19, 2015) ("[I]n prohibiting the plaintiffs from disclosing the terms of the settlement, the confidentiality provision is contrary to well-established public policy and impedes one of the goals of the FLSA—to ensure that all workers are aware of their rights.").[2]

---

[2] In reaching this decision, the Court notes that certain district courts in other circuits have reached the opposite conclusion with respect to confidentiality provisions where the settlement amount set forth in the agreement

In addition, the operative release language set forth in the agreement is exactly the type of language that the Second Circuit characterized as "overbroad." *See Cheeks*, 796 F.3d at 206. Specifically, the parties' release language here includes "actions and/or claims against the Defendants, known or unknown, which [Plaintiff] may have as of the date of this Agreement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to Defendants' payment of wages to Plaintiff during Plaintiff's employment with Defendants . . . ." *See* Settlement Agreement § 5. This "known or unknown" and "including but not limited to" phrasing amounts to a general release that offends the FLSA. *Cheeks*, 796 F.3d at 206; *see also Mahalick*, 2015 WL 3400918, at *2 ("'[A]n employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA.'") (quoting *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)); *Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2015 WL 129723, at *1 (S.D.N.Y. Jan. 9, 2015) (holding that FLSA settlement agreements cannot waive "practically any possible claim against the defendants").

For these reasons, the parties' settlement agreement violates the FLSA and their joint motion for approval of that agreement is denied. This denial is without prejudice to resubmitting a revised agreement that complies with the FLSA's requirements.

Dated: Central Islip, New York
   October 28, 2015       SO ORDERED

                 s/ Steven I. Locke
                 STEVEN I. LOCKE
                 United States Magistrate Judge

---

is filed with the court, and therefore publicly available. *See, e.g.*, *Salamone v. Baltimore Diamond Exch., Inc.*, No. JKB-14-1507, 2014 WL 2930788, at *1 (D. Md. June 27, 2014) ("The agreement includes a confidentiality provision . . . that is not permitted without compelling reasons in this type of case. . . . However, since the Settlement Agreement is filed as a matter of public record, the provision is of no practical effect) (internal citation omitted). While this reasoning makes some sense, it was expressly rejected in *Nights of Cabiria* and is impossible to reconcile with *Cheeks*. Accordingly, it is rejected by the Court.